UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARYSARAH L.,[1] | Case No.  19-cv-01409-TSH |
| Plaintiff, | |
| v. | **ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| ANDREW M. SAUL, | Re: Dkt. Nos. 23, 24 |
| Defendant. | |

## I.    INTRODUCTION

Plaintiff Marysarah L. brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Andrew M. Saul, Commissioner of Social Security, denying her claim for disability benefits.  Pending before the Court are the parties' cross-motions for summary judgment.  ECF Nos. 23 (Pl.'s Mot.), 24 (Def.'s Mot.).  Pursuant to Civil Local Rule 16-5, the motions have been submitted without oral argument.  Having reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion for the following reasons.

## II.    BACKGROUND

**A.    Age and Work Experience**

Plaintiff is 53 years old.  AR 291.  She served in the military for eight years and has worked as a chef and as an athlete's trainer.  AR 130, 158.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

United States District Court
Northern District of California

**B.      Medical Evidence**

The administrative record is nearly 2,800 pages, with over 2,000 pages of medical evidence.  Rather than providing a complete summary here, the Court shall address the relevant facts as necessary below.

### III.    SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

On August 25, 2015, Plaintiff filed a claim for Disability Insurance Benefits, alleging disability beginning on August 15, 2014.  AR 291-92.  On January 12, 2016, the agency denied Plaintiff's claim, finding she did not qualify for disability benefits.  AR 206-11.  Plaintiff subsequently filed a request for reconsideration, which was denied on April 19, 2016.  AR 214-19. On June 8, 2016, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 221-22.  ALJ Betty Barbeito conducted a hearing on August 22, 2017.  AR 125-63.  Plaintiff testified in person at the hearing and was represented by counsel, John Robertson.  The ALJ also heard testimony from Vocational Expert Robert Raschke and Medical Expert Robert Sklaroff.

**A.      Plaintiff's Testimony**

Plaintiff testified that she formerly served in the U.S. Army for eight years as a chef.  AR 130.  She last worked on August 15, 2014, at which time she had been working as a "Gap chef" for 11 years and as the head chef at the Happy Valley Christian Center. AR 130-31.  She stopped working because she was in too much pain from stomach pain and from blockages that could last eight days.  AR 131.

Plaintiff testified that she cannot work because she is in pain and has no energy, she is unable to have bowel movements and bleeds internally, she had a heart attack, and is "extremely fatigued and in pain at all times."  AR 135.  When she eats solid food, she gets a blockage and gets very ill or throws up.  *Id.*  Food gets stuck in her ileocecal valve and she has had three operations. *Id.*  After the first, she became ill to the point where she had level ten pain and was defecating about a quarter cup of blood every time she had a bowel movement.  AR 135-36.

Plaintiff testified she is pretty weak on a daily basis and "horizontal a lot."  AR 145.  She could lift 20-25 pounds and stand for about two hours a day in 15-minute increments.  AR 146. When not in bed, she typically cooked for her husband four times a week, cleaned the house in

2

sections (clean the toilet, rest, clean the sink, rest, vacuum for 10 minutes, rest, etc.), ran errands, picked up food from a food bank at various locations, went to lunch with friends, juiced her meals, and drove about an hour away to Stanford University for appointments.  AR 148-50.  She has to use the restroom up to 40 times a day.  AR 151.

Plaintiff was taking medicine for blood pressure and clonazepam if she needed help sleeping, but she was generally "not good with pain medications" and had to eliminate most of the medication she had been prescribed.  AR 152-53.

**B.    Medical Expert**

Dr. Sklaroff reviewed the medical evidence of record and gave testimony of his evaluation. He testified that when Plaintiff applied for disability, it was noted that she had a lot of GI symptoms, including the need in 2014 for "lots of adhesions."  AR 138.  He also noted she had internal hemorrhoids and that she felt her anal fissures were becoming more of a problem.  *Id.* Although Plaintiff alleged she had a cardiomyopathy diagnosis, he did not see evidence of a cardiac impairment in the medical evidence.  AR 139, 142.  He acknowledged a diagnosis of fibromyalgia but stated it did not appear to be supported by evidence in the record.  AR 139, 141-42.  Dr. Sklaroff also acknowledged that Plaintiff complained of not being able to keep her food down and vomiting, but there did not seem to be any corroboration of the validity of her complaints.  AR 141.  Dr. Sklaroff opined that Plaintiff did not prove a disabling impairment and that she could stand, walk, and sit for six hours in an eight-hour workday with normal breaks.  AR 143-44.

**C.    Vocational Expert's Testimony**

The vocational expert testified that Plaintiff has past work under the Dictionary of Occupational Titles ("DOT")[2] as a chef (DOT 313.131-014, Specific Vocational Preparation

---

[2] The Dictionary of Occupational Titles by the United States Department of Labor, Employment & Training Administration, may be relied upon "in evaluating whether the claimant is able to perform work in the national economy."  *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The DOT classifies jobs by their exertional and skill requirements and may be a primary source of information for the ALJ or Commissioner.  20 C.F.R. § 404.1566(d) (1).  The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles."  *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001).

1   ("SVP")[3] level 7) and as an athlete's trainer (DOT 153.227-014, SVP 6).  AR 158.  The ALJ then

2   asked the expert a series of hypotheticals.

3        In the first, the ALJ asked the expert to consider

4            The hypothetical individual has the ability to, mentally, the
         limitations are all mild.  The RFC is a hypothetical individual who

5            has the ability to occasionally lift 50 pounds, frequently 25 pounds.
         Stand/walk/sit six hours in an eight-hour workday with normal

6            breaks.  Push/pull unlimited other than what was previously discussed
         for lift/carry.  No postural, visual, and environmental limitations.  Can

7            such an individual do the claimant's past work?

8   AR. 158-59.  The expert responded that the individual could perform both of Plaintiff's previous

9   jobs. AR 159.

10       In the second hypothetical, the ALJ asked the expert to consider "a person who would

11  require four additional 10-minute breaks throughout the workday unscheduled.  Would that person

12  be able to maintain employment?"  *Id.*  The expert responded no, because most employers would

13  only tolerate this once or twice a day for a couple of minutes.  AR 159-60.

14       The ALJ then asked whether changing the lift restriction from the first hypothetical to less

15  than 10 pounds rarely and 10 pounds or more never would preclude the claimant's past work.  AR

16  160.  The expert responded that it would, as all previous work had been performed light to heavy.

17  *Id.*  The expert opined that there would be work available at the sedentary level,[4] including shade

18  assembler (739.684-094, SVP 2) and lens block stager (716.687-030, SVP 2).  *Id.*

19       The ALJ then asked whether changing the stand/walk/sit restriction from the first

20  hypothetical to up to two hours would preclude all work.  AR 161.  The expert responded that it

21  would because the individual would not be able to meet full-time employment.  *Id.*

22       Finally, the ALJ asked "if a person were to miss four days per months on a regular and

23  

24  [3] "The Dictionary of Occupational Titles lists an SVP time for each described occupation.  Using
the skill level definitions in 20 C.F.R §§ 404.1568 and 416.968, unskilled work corresponds to an

25  SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an
SVP of 5-9 in the DOT."  Social Security Ruling 00-4p.

26  [4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or

27  carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as
one which involves sitting, a certain amount of walking and standing is often necessary in carrying

28  out job duties. Jobs are sedentary if walking and standing are required occasionally and other
sedentary criteria are met."  20 C.F.R. § 404.1567(a).

1  continuing basis, would there be employment?" *Id.* The expert responded there would not as the

2  person would be absent 20 percent of the work schedule. *Id.*

3  **D.   ALJ's Decision and Plaintiff's Appeal**

4          On December 20, 2017, the ALJ issued an unfavorable decision finding Plaintiff was not

5  disabled. AR 46-72. This decision became final when the Appeals Council declined to review it

6  on January 16, 2019. AR 1-8. Having exhausted all administrative remedies, Plaintiff

7  commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). On January 21, 2020,

8  Plaintiff filed the present Motion for Summary Judgment. On February 18, 2020, Defendant filed

9  a Cross-Motion for Summary Judgment.

10                        **IV.   STANDARD OF REVIEW**

11         This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42

12  U.S.C. § 405(g). An ALJ's decision to deny benefits must be set aside only when it is "based on

13  legal error or not supported by substantial evidence in the record." *Trevizo v. Berryhill*, 871 F.3d

14  664, 674 (9th Cir. 2017) (citation and quotation marks omitted). Substantial evidence is "such

15  relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*

16  *v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation and quotation marks omitted). It requires

17  "more than a mere scintilla" but "less than a preponderance" of the evidence. *Id.*; *Trevizo*, 871

18  F.3d at 674.

19         The court "must consider the entire record as a whole, weighing both the evidence that

20  supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm

21  simply by isolating a specific quantum of supporting evidence." *Trevizo*, 871 F.3d at 675 (citation

22  and quotation marks omitted). However, "[w]here evidence is susceptible to more than one

23  rational interpretation, the ALJ's decision should be upheld." *Id.* (citation and quotation marks

24  omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical

25  testimony, and for resolving ambiguities." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014)

26  (citation and quotation marks omitted).

27         Additionally, the harmless error rule applies where substantial evidence otherwise supports

28  the ALJ's decision. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). "[A]n error is

United States District Court
Northern District of California

5

1    harmless so long as there remains substantial evidence supporting the ALJ's decision and the error

2    does not negate the validity of the ALJ's ultimate conclusion." *Id.* (citation and quotation marks

3    omitted).  A court may not reverse an ALJ's decision because of a harmless error.  *Id.* at 1111

4    (citation omitted).  "[T]he burden of showing that an error is harmful normally falls upon the party

5    attacking the agency's determination." *Id.* (citation and quotation marks omitted).

### V.    DISCUSSION

#### A.    Framework for Determining Whether a Claimant Is Disabled

8        A claimant is considered "disabled" under the Social Security Act if two requirements are

9    met.  *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  First, the

10   claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of

11   any medically determinable physical or mental impairment which can be expected to result in

12   death or which has lasted or can be expected to last for a continuous period of not less than 12

13   months." 42 U.S.C. § 423(d)(1)(A).  Second, the impairment or impairments must be severe

14   enough that the claimant is unable to perform previous work and cannot, based on age, education,

15   and work experience "engage in any other kind of substantial gainful work which exists in the

16   national economy." *Id.* § 423(d)(2)(A).

17       The regulations promulgated by the Commissioner of Social Security provide for a five-

18   step sequential analysis to determine whether a Social Security claimant is disabled.[5]  20 C.F.R. §

19   404.1520.  The claimant bears the burden of proof at steps one through four.  *Ford v. Saul*, 950

20   F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

21       At step one, the ALJ must determine if the claimant is presently engaged in a "substantial

22   gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), defined as "'work done for pay or profit that

23   involves significant mental or physical activities.'"  *Ford*, 950 F.3d at 1148 (internal quotations

24   and citation omitted).  Here, the ALJ determined Plaintiff had not performed substantial gainful

25   activity since August 15, 2014.  AR 51.

26

27   _____

28   [5] Disability is "the inability to engage in any substantial gainful activity" because of a medical
     impairment which can result in death or "which has lasted or can be expected to last for a
     continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

United States District Court
Northern District of California

1    At step two, the ALJ decides whether the claimant's impairment or combination of

2    impairments is "severe," 20 C.F.R. § 404.1520(a)(4)(ii), "meaning that it significantly limits the

3    claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148

4    (quoting 20 C.F.R. § 404.1522(a)).  If no severe impairment is found, the claimant is not disabled.

5    20 C.F.R. § 404.1520(c).  Here, the ALJ determined Plaintiff had the following severe

6    impairments: angina pectoris without ischemic heart disease, fibromyalgia, abdominal pain with

7    intestinal blockage, back pain, and high blood pressure.  AR 51.

8    At step three, the ALJ evaluates whether the claimant has an impairment or combination of

9    impairments that meet or equals an impairment in the "Listing of Impairments" (referred to as the

10   "listings").  *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1.  The listings

11   describe impairments that are considered "to be severe enough to prevent an individual from doing

12   any gainful activity."  *Id.* § 404.1525(a).  Each impairment is described in terms of "the objective

13   medical and other findings needed to satisfy the criteria of that listing."  *Id.* § 404.1525(c)(3).

14   "For a claimant to show that his impairment matches a listing, it must meet all of the specified

15   medical criteria.  An impairment that manifests only some of those criteria, no matter how

16   severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted).  If a

17   claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent

18   to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering

19   age, education and work experience.  20 C.F.R. § 404.1520(d).  Here, the ALJ determined Plaintiff

20   did not have an impairment or combination of impairments that meets the listings.  AR 52.

21   If the claimant does not meet or equal a listing, the ALJ proceeds to step four, where the

22   ALJ assesses the claimant's residual functional capacity ("RFC"),[6] which is defined as "work that

23   [the claimant has] done within the past 15 years, that was substantial gainful activity, and that

24   lasted long enough for [the claimant] to learn to do it."  20 C.F.R. § 404.1560(b)(1).  If the ALJ

25   determines, based on the RFC, that the claimant can perform past relevant work, the claimant is

26   not disabled.  *Id.* § 404.1520(f).  Here, the ALJ determined Plaintiff has the RFC to perform

27

28   ──────────────
     [6] A claimant's RFC is defined as "the most [the claimant] can still do despite [the claimant's]
     limitations."  20 C.F.R. § 404.1545(a)(1).

United States District Court
Northern District of California

medium work[7] "except she can stand and/or walk with normal breaks for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; can lift and/or carry 50 pounds occasionally and 25 pounds frequently; push and/or pull is unlimited, with the exception of her ability to lift and/or carry; and has no postural, manipulative, visual, communicative, or environmental limitations." AR 53.  Based on this RFC, the ALJ determined Plaintiff could perform past relevant work as a chef and athletic trainer as this work "does not require the performance of work-related activities precluded by" her RFC.  AR 64.

At step five, the burden shifts to the agency to prove that "'the claimant can perform a significant number of other jobs in the national economy.'"  *Ford*, 950 F.3d at 1149 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002).  To meet this burden, the ALJ may rely on the Medical-Vocational Guidelines found at 20 C.F.R. Pt. 404 Subpt. P, App. 2,[8] or on the testimony of a vocational expert.  *Ford*, 950 F.3d at 1149 (citation omitted).  "[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy."  20 C.F.R. § 404.1560(b)(2).  An ALJ may also use "other resources, such as the DOT.  *Id.*  Here, because the ALJ determined Plaintiff could perform her past work, she did not proceed to the fifth step of the analysis.

**B.      Plaintiff's Arguments**

Plaintiff, who represents herself in this case, filed a five-page, single-spaced motion that is written in a narrative style without headings.  She appears to raise three arguments: (1) the ALJ's

---

[7] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 416.967(c).

[8] The Medical-Vocational Guidelines "relieve the Secretary of the need to rely on vocational experts by establishing through rulemaking the types and numbers of jobs that exist in the national economy."  *Heckler v. Campbell*, 461 U.S. 458, 461(1983).  The Guidelines "consist of a matrix of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy."  *Id.* at 461-62 (footnotes omitted).  The guidelines are commonly known as "the grids".  *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

United States District Court
Northern District of California

1  decision is not supported by substantial evidence; (2) additional medical evidence, dated October

2  and December 2019 and not part of the AR, would change the outcome of the ALJ's decision; and

3  (3) her counsel at the administrative hearing provided ineffective assistance.

4  **C.    Substantial Evidence Supports the ALJ's Decision**

5          Plaintiff argues the "Administrative Record, all the misconstrued, confusing, years upon

6  years mushed together" has "ma[d]e my case sound weak" and that "[w]hat the ALJ, the courts,

7  and anyone I am put in front of does not understand is that in life I was a triple A personality . . .

8  so my worst might 'look' to be an average person's best."  Pl.'s Mot. at 4-5.

9          As noted above, "an ALJ's factual findings [are] 'conclusive' if supported by 'substantial

10 evidence.'"  *Biestek*, 139 S. Ct. at 1153 (quoting 42 U.S.C. § 405(g)).  Plaintiff has the burden to

11 prove that she is unable to work or disabled.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir.

12 2005); *see also* 42 U.S.C. § 423(d)(5) ("[a]n individual shall not be considered to be under a

13 disability unless [s]he furnishes such medical and other evidence of the existence thereof as the

14 Commissioner of Social Security may require").

15         Here, the Court finds that substantial evidence supported the ALJ's finding that, despite

16 Plaintiff's intestinal blockage and other medical issues for which she sought treatment, she was

17 not disabled.  In regards to her internal abdominal organs, the ALJ acknowledged that Plaintiff

18 underwent hernia surgery in 2014, and that in November 2014, she was healing well, had regular

19 bowel movements, and ate some solids.  AR 47, 464, 522-23.  Subsequently, Plaintiff had some

20 issues.  In May 2015, she had reactive gastropathy associated with the use of anti-inflammatory

21 drugs in bile reflux in stomachs.  AR 58, 549.  Plaintiff's physician recommended increased fiber

22 intake.  AR 58, 544.

23         In March 2017, she called her doctors and complained of abdominal pain, nausea, diarrhea,

24 and vomiting while eating a liquid diet.  AR 61, 996.  She refused to go to an emergency room.

25 AR 996.  Her doctors reported her symptoms were consistent with irritable bowel syndrome.  AR

26 61, 996-97.  Imaging revealed normal bowel with no adhesions.  AR 996.  Plaintiff complained

27 that she was "not getting help" on her abdominal issues and appeared to disagree with the IBS

28 diagnosis.  AR 61, 997.

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In April 2017, the doctors reported that Plaintiff could have hypersensitivity – perhaps related to fibromyalgia – that led to pain similar to the symptoms she felt when her intestine was obstructed. AR 61, 999. Imaging of bowels revealed normal bowel with no adhesions. AR 999. Similarly, other diagnostic imaging was clean and did not show abnormalities. *See, e.g.*, AR 465 (normal emptying study), 1724 ("Small bowel appears be within normal limits, no specific abnormality or distension identified"), 1728 (negative abdominal ultrasound), 1730 (no evidence of bowel obstruction or ileus), 2745 ("Normal post cholecystectomy abdominal ultrasound"), 555 (normal esophagus, recommendation to use proton pump inhibitor for nausea), 558 (normal emptying study), 706 (no sign of significant ileus/lack of movement or obstruction)). There was evidence of post-surgical changes from internal hemorrhoids but no obstruction or ileus in the bowel. AR 542-47, 552, 559-61. With the exception of a finding of diffuse tenderness but with no guarding or rebound, physical examinations of the abdomen were normal or unremarkable and Plaintiff was consistently in no acute distress. AR 474, 1424, 1442. Plaintiff's doctors recommended she continue getting B12 shots. AR 1424.

In 2015, Plaintiff sought opinions from various doctors, Dr. Waddle, Dr. Dakkuri, and Dr. Chankai, for advice on getting a laparotomy, and they all found it was not required. AR 59, 62, 566, 576, 622, 623, 741, 787, 910, 923, 930. In November 2016 and May 2017, Plaintiff received a Botox injection to treat her anal fissure, which she reported helped with her bowel movements. AR 61, 2392, 2408, 2422, 2427, 2518. In and around April 2017, Plaintiff reported to her doctors that she thought she was improving overall. AR 61, 1585-86, 1601-02, 1615-16, 2536, 2548, 2552-53, 2568-69.

Regarding Plaintiff's heart issues and having a heart attack in October 2015 (*see, e.g.*, AR 2383), the ALJ noted there was a finding in the record that she had cardiomyopathy (disease of the heart muscle), but no examinations showed heart failure or abnormal rhythm. AR 56, 2447, 2453, 2462, 2480, 2483, 2491, 2578, 2717. On stress tests in February and November 2015, Plaintiff performed well – "above average" – and exhibited normal heart rate and rhythm. AR 897-900. There was no evidence of ischemia on EKG or echocardiogram and at most she exhibited only mild regurgitation (not closing all the way) of all four valves, which was deemed to be of minimal

10

concern.  AR 58, 897-902.  In September 2015, a chest x-ray show no acute cardiopulmonary process, and cardiac catheterization and coronary angiography procedures showed normal coronaries, but with moderately severe hypokinesia (decreased movement) of the anterior wall.  AR 664-65.

Regarding fibromyalgia and fatigue, the ALJ noted Plaintiff sought treatment for fibromyalgia with Dr. Senna in Miami.  *See, e.g.*, AR 57, 471, 525.  She took anti-anxiety medications like lorazepam that helped her sleep through the night and helped her feel rested when she woke up.  AR 496, 923.  She reported that her fatigue improved on B12 shots and that her energy improved on liquid vitamins.  AR 929, 935.

Further, as the ALJ noted, medical expert Dr. Sklaroff acknowledged that Plaintiff had gastrointestinal symptoms, internal hemorrhoids, and anal fissures, but noted that the record evidence did not support her complaints as many examination findings were negative.  AR 55, 138-44.  He noted Plaintiff's cardiac complaints but also noted that there was no evidence of a cardiac impairment in the medical evidence.  Dr. Sklaroff also acknowledged a diagnosis of fibromyalgia, but stated that it did not appear to be supported by evidence in the record.  Dr. Sklaroff found that Plaintiff did not prove a disabling impairment and that she could stand, walk, and sit for six hours in an eight-hour workday with normal breaks.  AR 56, 139-44.  The ALJ properly adopted Dr. Sklaroff's opinion because it was supported by and consistent with the record evidence.  *See* 20 C.F.R. § 404.1527(c)(3)-(4) (the more a medical source presents medical signs to support her opinion, or the more consistent her opinion is with the overall record, the more weight the ALJ will give to that opinion); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (opinions of non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

Finally, as the ALJ noted, Plaintiff's activities undermined her claim of disabling conditions.  For example, she indicated that she typically cooked for her husband, cleaned the house, ran errands, picked up food from a food bank at various locations, went to lunch with friends, juiced her meals, and drove about an hour away to Stanford University for appointments.  AR 57, 62, 148-150, 399, 404-14.  She also admitted going on a long motorcycle ride with her

United States District Court
Northern District of California

husband, riding her bicycle (and getting injured from falling off her bicycle after her purse strap got caught in a wheel), and planning a trip with her husband.  AR 61, 63, 1426, 1467, 1473. While the ALJ noted that these activities need not be mutually exclusive from disability, it was reasonable for the ALJ to find that given her ability to perform these activities, Plaintiff was not as limited from being able to work as she alleged.  *See Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (concluding that a claimant's testimony about her daily activities, which included taking care of personal needs, preparing easy meals, doing light housework, and shopping for some groceries, may be seen as inconsistent with the presence of a disabling condition) (citing *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989)).

While Plaintiff may disagree with the ALJ's evaluation, the Court finds the ALJ's interpretation of the evidence was reasonable and supported by substantial evidence.  Thus, the ALJ's conclusion must be affirmed.  *See Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) ("the key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled.").

## D.    New Evidence

As part of her motion, Plaintiff has submitted medical reports from Mexico, dated October and December 2019, that are not in the record.  ECF No. 23-2.  In order to merit a remand for consideration of additional evidence, Plaintiff must show that the evidence is new and material and demonstrate good cause for not having submitted the evidence previously.  42 U.S.C. § 405(g), sentence six.  To be material, the new evidence must bear directly and substantially on the matter in dispute, and Plaintiff must demonstrate that there is a "reasonable possibility" that the new evidence would have changed the outcome of the administrative hearing.  *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001).  Also, evidence must relate to the time period that was before the ALJ.  *Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 511-12 (9th Cir. 1987) ("[t]he new evidence indicates, at most, mental deterioration after the hearing, which would be material to a new application, but not probative of his condition at the hearing").

A claimant does not meet the good cause requirement merely by obtaining more favorable

United States District Court
Northern District of California

12

United States District Court
Northern District of California

1   evidence once her claim has been denied.  *Mayes*, 276 F.3d at 463.  To demonstrate good cause,

2   Plaintiff must establish that the new evidence was unavailable earlier.  *Id.*; *see also Clem v.*

3   *Sullivan*, 894 F.2d 328, 332 (9th Cir. 1990) ("Plaintiff does not meet the good cause requirement

4   simply by obtaining a more favorable report from an expert witness once his claim is denied.");

5   *Allen v. Sec'y of Health and Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984) (good cause

6   requirement would be meaningless if such circumstances were sufficient to allow introduction of

7   new evidence).

8        Here, Plaintiff fails to demonstrate good cause or materiality.  Plaintiff's new evidence

9   does not change the fact that substantial evidence supported the ALJ's decision, as discussed

10   above.  As a preliminary matter, the October and December 2019 reports post-date the ALJ's

11   decision dated December 20, 2017 by nearly two years.  The reports indicate laboratory results

12   and diagnoses including "likely" intestinal adhesions, bowel adhesions with obstructions, and

13   intestinal subocclusion secondary to adhesions.  They also indicate a prognosis "reserved for

14   evolution."  However, Plaintiff does not establish whether or how these later dated reports refer to

15   the relevant period at issue.  *See Mayes*, 276 F.3d at 462 (to be material, the new evidence must

16   bear directly and substantially on the matter in dispute, and Plaintiff must demonstrate that there is

17   a "reasonable possibility" that the new evidence would have changed the outcome of the

18   administrative hearing); *Sanchez*, 812 F.2d at 511-12 ("[t]he new evidence indicates, at most,

19   mental deterioration after the hearing, which would be material to a new application, but not

20   probative of his condition at the hearing").  Further, the mere existence of a diagnosis or an

21   abdominal adhesion is not proof of disability.  *See Sample*, 694 F.2d 639, 642 (9th Cir. 1982).  If

22   Plaintiff wishes to submit a new application for the period after the ALJ decision, she is not barred

23   from doing so.  *See Sanchez*, 812 F.2d at 512.

24        To the extent that Plaintiff suggests that these reports evaluate or relate to her condition

25   during the relevant period, she fails to demonstrate good cause for not providing this additional

26   evidence while the case was under review by the ALJ.  *Mayes*, 276 F.3d at 463; *see also Clem*,

27   894 F.2d at 332 ("Plaintiff does not meet the good cause requirement simply by obtaining a more

28   favorable report from an expert witness once his claim is denied."); *Allen*, 726 F.2d at 1473 (good

13

United States District Court
Northern District of California

1  cause requirement would be meaningless if such circumstances were sufficient to allow

2  introduction of new evidence); *accord Duggan v. Barnhart*, 66 F. App'x 730, 732 (9th Cir. 2003).

3  Rather, the evidence shows that the ALJ properly developed the record and Plaintiff's many

4  medical sources provided their records and opinions during the relevant period.  The current

5  administrative record is nearly 2,800 pages, with over 2,000 pages of medical evidence.  The ALJ

6  properly found the record sufficient to evaluate the evidence and determine that Plaintiff had not

7  proven disability for the relevant period.  AR 24-33.

8  **E.      Ineffective Assistance of Counsel**

9           Plaintiff argues her lawyer and his company "were complete jokes" and he "failed to

10  represent me due diligently, he had no objections, no contests, no substantial or knowledgeable

11  questions for my case to the Dr, the ALJ or me."  Pl.'s Mot. at 3.  However, this is not a basis for

12  reversal or remand as "there is no constitutional right to representation at a Social Security

13  hearing."  *Miller v. Barnhart*, 33 F. App'x 914 (9th Cir. 2002) (citing *Graham v. Apfel*, 129 F.3d

14  1420, 1422 (11th Cir. 1997); *Clark v. Schweiker*, 652 F.2d 399, 403 (5th Cir. 1981)); *Ardison v.

15  Colvin*, 2016 WL 8223435, at *8 (N.D. Cal. May 24, 2016); *Alvernaz v. Colvin*, 2014 WL

16  1338314, at *8 (E.D. Cal. 2014) (citing 4 Soc. Sec. Law & Prac. § 46:3) ("Given the

17  nonadversarial nature of the administrative process, competent legal representation of the claimant

18  during the process is not a prerequisite to issuance of a valid administrative decision.")).  Thus,

19  because Plaintiff has no constitutional right to effective assistance of counsel in this case, her

20  argument fails.

21                          **VI.    CONCLUSION**

22           For the reasons stated above, the Court **DENIES** Plaintiff's motion and **GRANTS**

23  Defendant's cross-motion.  The Court shall enter a separate judgment, after which the Clerk of

24  Court shall terminate the case.

25           **IT IS SO ORDERED.**

26  Dated: May 18, 2020

27                                              _____

28                                              THOMAS S. HIXSON
                                                United States Magistrate Judge